**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ron Zachary Pettit,<br><br>Plaintiff,<br><br>v.<br><br>Paul Penzone, et al.,<br><br>Defendants. | No. CV 17-00515-PHX-DGC (MHB)<br><br>**ORDER** |

Plaintiff Ron Zachary Pettit, who is currently confined in Arizona State Prison Complex-Eyman, brought this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1.) Defendants move for summary judgment, and Plaintiff opposes.[1] (Docs. 50, 79.)

**I.  Background**

On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated First Amendment retaliation claims against Defendants Perrotta, Moore, and Sergeant Sajonia[2] in Counts II and III, and Eighth Amendment medical-care claims against Defendant Braaten in Count V. (Doc. 10.) The Court dismissed the remaining claims and Defendants. (*Id.*) Defendants Perrotta, Moore, and Sajonia move for

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) regarding the requirements of a response. (Doc. 55.)

[2] Although Plaintiff named Sergeant Sajonia as Sergeant "A8976," it appears that Sergeant Sajonia is Sergeant A8976's actual name. (Docs. 18, 23.) The Court will direct the Clerk of the Court to update the docket accordingly.

summary judgment in their favor on Counts II and III on the basis that Plaintiff failed to properly exhaust his available administrative remedies. (Docs. 50, 54.)

## II. Legal Standards

### A. Summary Judgment

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material (a fact that might affect the outcome of the suit under the governing law), and that the dispute is genuine (the evidence is such that a reasonable jury could return a verdict for the nonmovant). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968), but it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. A court must believe the nonmovant's evidence and draw all inferences

in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

**B.     Exhaustion**

Under the Prison Litigation Reform Act (PLRA), a prisoner must exhaust "available" administrative remedies before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005). The prisoner must complete the administrative review process in accordance with the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it. *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936-37 (a defendant must demonstrate that applicable relief remained available in the grievance process). Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The ultimate burden, however, rests with the defendant. *Id.* Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

If summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge; a plaintiff is not entitled to a jury trial on the issue of exhaustion. *Albino*, 747 F.3d at 1170-71. But if a court finds that the prisoner exhausted administrative remedies, that administrative remedies were not available, or that the failure to exhaust administrative remedies should be excused, the case proceeds to the merits. *Id.* at 1171.

**III. Facts**

**A. Exhaustion Process**

Plaintiff was a pretrial detainee in the Fourth Avenue jail facility of the Maricopa County Sheriff's Office (MCSO) at the times of the events alleged in the Complaint, between December 12, 2016 and March 1, 2017. (Doc. 51 ¶ 1; Doc. 51-1 at 3.) The MCSO provides a multi-level process for the redress of inmate grievances, established by MCSO Policy DJ-3 entitled "Inmate Grievance Procedure." (Doc. 51 ¶ 2.) The procedure can also be found in Section 13 of the Rules and Regulations for Inmates.

According to the grievance procedure, inmates must submit an Inmate Grievance Form to detention personnel within 48 hours of the event being grieved and must include a proposed resolution. (Doc. 51-1 at 10.) If detention personnel are unable to resolve a non-medical grievance by the end of shift, detention personnel must forward the Inmate Grievance Form to the shift supervisor. (*Id.* at 11.) A shift supervisor must respond to a grievance within seven working days. (*Id.*) If the shift supervisor is unable to resolve the grievance, he shall forward the grievance to the Custody Bureau Hearing Unit (CBHU). (*Id.* at 11-12.) Within eleven working days from the date a formal grievance is signed and marked as a formal grievance, the CBHU sergeant must meet with the inmate in an attempt to resolve the grievance. (*Id.* at 12.) If the grievance is not resolved, the inmate shall be informed of his right to appeal to the jail facility commander within 24 hours of the CBHU sergeant's response. (*Id.*) An inmate who has not received a response within seven working days may file an Institutional Grievance Appeal Form through the CBHU to the jail facility commander. (*Id.*) The jail facility commander must take action and provide a written response within seven working days from the date the appeal was received. (*Id.* at 13.) If the Institutional Grievance Appeal is not resolved by the jail facility commander, the inmate shall be informed of his right to appeal to the External Referee within 24 hours of receipt of the jail facility commander's response. (*Id.*)

An inmate who has not received a response within seven working days of submittal may file and External Grievance Appeal, unless he has agreed in writing to an

extension of time.  (*Id.*)  The CBHU Commander will review the External Grievance Appeal and, if he determines that it is frivolous, repetitive, or relates to a non-grievable issue, he will forward it to the appropriate bureau commander with a recommendation to end the process; the bureau commander will respond to the CBHU Commander within 14 working days.  (*Id.* at 14.)  If the bureau commander agrees with the CBHU Commander, the appeal will be returned to the inmate and the grievance process is complete.  (*Id.*)  If the bureau commander disagrees with the recommendation of the CBHU commander, the appeal shall be sent to the External Referee.  (*Id.*)  If the inmate does not receive a response from the External Referee within 25 calendar days, he may request in writing that the External Referee make a decision within seven calendar days.  (*Id.* at 15.)  The jail considers the response of the External Referee to be final and to conclude the formal inmate grievance procedure.  (*Id.*)

### B. **Plaintiff's Grievances**

Between December 11, 2016 and March 1, 2017, Plaintiff submitted four grievances relating to a February 2, 2017 incident and the claims that Defendants Perrotta and Sajonia retaliated against him.  (Doc. 51 ¶ 22.)

#### 1. **Grievance 17-087827**

On February 2, 2017, Plaintiff submitted Inmate Grievance Form # 17-087827 in which he complained that Defendants Moore and Perrotta sexually harassed him on February 2, 2017.  (Doc. 51-1 at 28; Doc. 51 ¶ 23.)  Plaintiff submitted his institutional grievance appeal for this grievance on February 15, 2017.  (Doc. 51 ¶ 24.)  Plaintiff submitted his External Grievance Appeal of this grievance on February 17, 2017, and the hearing date on the Response by External Referee was February 25, 2017.  (*Id.* ¶¶ 25-26.)

#### 2. **Grievance 17-087832**

On February 2, 2017, Plaintiff submitted Inmate Grievance Form #17-087832 in which he alleged that Defendants Moore and Perrotta made sexual threats, and refused Plaintiff dinner and medication on February 2, 2017.  (*Id.* ¶ 28; Doc. 51-1 at 44.)  Plaintiff submitted his Institutional Grievance Appeal on February 15, 2017.  (Doc. 51

¶ 29.) Plaintiff submitted his External Grievance Appeal on February 24, 2017. (*Id.* ¶ 30.) The hearing date on the Response by the External Referee was March 25, 2017. (*Id.* ¶ 31.)

### 3. Grievance 17-088828

On February 4, 2017, Plaintiff submitted Inmate Grievance Form #17-088828, in which he requested to have Ramirez and Defendants Moore and Perrotta kept away from him due to threats and intimidation. (Doc. 51-1 at 58; Doc. 51 ¶ 33.) Plaintiff submitted his Inmate Institutional Grievance Appeal on February 14, 2017. (Doc. 51 ¶ 34.) Plaintiff submitted his External Grievance Appeal on February 17, 2017. (*Id.* ¶ 35.) The hearing date on the response by the External Referee was February 26, 2017. (*Id.* ¶ 36.)

### 4. Grievance 17-101591

On February 16, 2017, Plaintiff submitted Inmate Grievance Form #17-101591 in which he alleged that his due process rights were violated with regard to his claims against two officers, referencing his claims against Defendants Moore and Perrotta. (Doc. 51-1 at 68-71; Doc. 51¶ 38.) Plaintiff received a response to his grievance on February 23, 2017, and indicated on the response that he wanted to forward the grievance to the next level, but he was released from custody on March 1, 2017, while that grievance was still pending. (*Id.* ¶ 42.)

Plaintiff filed his Complaint in this action on February 14, 2017.[3]

**IV. Discussion**

Defendants argue that Plaintiff failed to properly exhaust his available administrative remedies prior to filing his lawsuit as required by the PLRA because all of his grievances were ongoing when he filed this lawsuit. In Response, Plaintiff appears to

---

[3] Although the Court's docket reflects that the Complaint was filed on February 17, 2017, because the Complaint is dated February 14, 2017, that is the proper date of filing. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (under the "prison mailbox rule," a document is deemed "filed" when delivered by the prisoner to a prison official for mailing). The Court's conclusion in this order would be the same for each of these dates.

argue that he was not aware of the steps of the grievance process (*see generally* Doc. 79), that "he was in fear for his safety and wanted his claim in court," and that he was unaware of "the PLRA Rule at the time of filing suit." (Doc. 79 at 3.)

Plaintiff did not exhaust his administrative remedies prior to filing his lawsuit. The Jail's grievance procedure considers the response of the External Referee to be final and to conclude the formal inmate grievance procedure. Proper exhaustion requires "using all steps that the agency holds out, and doing so properly." *See Woodford*, 548 U.S. at 90. Because Plaintiff did not wait to receive the External Referee's decisions prior to filing his lawsuit, he did not use all steps held out by the MCSO. Although each of the grievances was eventually exhausted after he filed this lawsuit, Plaintiff cannot exhaust after he files a complaint. "The bottom line is that a prisoner must pursue the prison administrative process as the first and primary forum for redress of grievances. He may initiate litigation in federal court only after the administrative process ends and leaves his grievances unredressed. It would be inconsistent with the objectives of [42 U.S.C. § 1997e(a)] to let him submit his complaint any earlier than that." *Vaden*, 449 F.3d at 1050.

Plaintiff's argument that he was not aware of the steps of the grievance process is belied by the fact that Plaintiff properly followed the steps of that process. Plaintiff's argument is also belied by his deposition testimony that he was aware of the steps of the grievance process and how to fully exhaust a grievance in February 2017. (Doc. 54-1 at 8-16.)

Plaintiff claims that he was in fear for his safety and needed his claim in court prior to exhausting, but does not provide any facts in support. *Cf. McBride v. Lopez*, 791 F. 3d 1115, 1120 (9th Cir. 2015) (although a failure to exhaust may be excusable based on a threat of retaliation, the inmate must show that (1) the threat of retaliation actually deterred the inmate from lodging a grievance or pursuing a particular part of the process, and (2) "the threat is one that would deter a reasonable inmate of ordinary firmness and

fortitude from lodging a grievance or pursuing part of the grievance process that the inmate failed to exhaust.") (citation omitted).

The Court concludes that Plaintiff did not properly exhaust his available administrative remedies as to Counts II and III prior to filing this action. Unexhausted claims must be dismissed without prejudice even if a prisoner exhausts remedies during the course of the litigation. *McKinney v. Carey*, 311 F.3d 1198, 1200 (9th Cir. 2001). Accordingly, Defendants' Motion for Summary Judgment will be granted, and Counts II and III will be dismissed without prejudice for failure to properly exhaust available administrative remedies.

**IT IS ORDERED:**

(1) The Clerk of the Court must update the docket to reflect that Sergeant Sajonia is Sergeant A8976's actual name.

(2) The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 50).

(3) Defendants' Motion for Summary Judgment (Doc. 50) is **granted**, and Plaintiff's First Amendment retaliation claims against Defendants Perrotta, Moore, and Sergeant Sajonia in Counts II and III are **dismissed without prejudice** for failure to properly exhaust available administrative remedies prior to filing his Complaint.

(4) The remaining claim in this action is Plaintiff's claim against Defendant Braaten in Count V for the denial of constitutionally adequate medical care.

Dated this 19th day of April, 2018.

David G. Campbell
United States District Judge